UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARTIN'S POINT HEALTH CARE, ) <br> INC., ) <br> ) <br> Defendant. ) | No. 2:23-CV-00259-LEW |

### ORDER ON MOTION TO DISMISS

In this action, Plaintiff Hospital Quirurgica Del Sur seeks to recover from Defendant Martin's Point, in its capacity as a healthcare insurer, the value of healthcare services it provided to an individual who participates in Martin's Point's Medicare Part C or "Medicare Advantage" program. The matter is before the Court on Martin's Point's Motion to Dismiss (ECF No. 19). For reasons that follow, the Motion is GRANTED.

#### BACKGROUND

Hospital Quirurgica Del Sur is a Mexican corporation that provides hospital and healthcare services to patients in Cancun, Mexico. From January 12, 2023, to February 16, 2023, James G. Taliaferro was voluntarily admitted to Hospital Quirurgica Del Sur. Upon his admission to Hospital Quirurgica Del Sur and during his hospitalization, Taliaferro signed a written contract acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator and provided information about his

applicable health insurance with Martin's Point Health Care, Inc., a Maine corporation with its principal place of business in Portland, Maine.

Non-party Passage Health International LLC is a limited liability company with a principal place of business in Fort Lauderdale, Florida. Passage performed billing submission, pre-authorization, and collection activities on behalf of Hospital Quirurgica Del Sur. Throughout Taliaferro's inpatient stay at Hospital Quirurgica Del Sur, Passage communicated with and received verification from Martin's Point that the proposed medical procedures in Mexico were covered by insurance provided by Martin's Point and that Taliaferro had applicable benefits for out of country emergency services. After receiving such assurances, Hospital Quirurgica Del Sur treated Taliaferro and he was eventually released.

Hospital Quirurgica Del Sur alleges that the services it provided to Taliaferro total $512,464.00. Hospital Quirurgica Del Sur's medical bills incurred on behalf of Taliaferro were provided to Martin's Point but Martin's Point refused to reimburse Hospital Quirurgica Del Sur except to the limit of $25,000.00. That amount is the maximum benefit for out-of-country medical services specified in Mr. Taliaferro's Medicare Part C health insurance contract with Martin's Point. Hospital Quirurgica Del Sur complains that Martin's Point never advised it of the existence of a $25,000.00 limitation even though Martin's Point informed Hospital Quirurgica Del Sur that Taliaferro's medical treatment in Mexico was covered by insurance with Martin's Point. More specifically, Hospital Quirurgica Del Sur alleges that it worked with Passage Health to verify coverage and Passage Heath had communications with Martin's Point, who made assurances that

Taliaferro's proposed medical procedures in Mexico were covered by its medical insurance.

Hospital Quirurgica Del Sur's Complaint asserts two causes of action: promissory estoppel and negligent misrepresentation. As to the latter cause of action, Hospital Quirurgica Del Sur alleges that Martin's Point supplied false information that guided Hospital Quirurgica Del Sur in its business transactions relating to Mr. Taliaferro, to its detriment. Hospital Quirurgica Del Sur does not allege, specifically, that there was a conversation with Martin's Point concerning the existence of insurance coverage limitations, but states that Martin's Point informed Passage Health that Taliaferro had "full medical insurance benefits." Compl. ¶ 29.

In support of its Motion to Dismiss, Martin's Point provides a letter exhibit. Mot. Ex. A (ECF No. 19-1). The letter is authored by Martin's Point HealthCare and authorizes inpatient service for Mr. Taliaferro for several days. The letter also states that the approval is subject to Medicare coding requirements for coverage and includes a code for CMS approval. The letter also concludes, in bold, that PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE. *Id.* Martin's Point asserts that it is proper to consider the exhibit in the context of a motion to dismiss because the authorization verification form is "integral to the claims in the complaint." Mot. at 5 n.5 (citing *Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 WL 342566 (D. Me. 2021)). The letter bears the date January 30, 2023, which is roughly half-way through Mr. Taliaferro's hospitalization.

In response to Martin's Point's Motion, Hospital Quirurgica Del Sur supplies exhibits of its own.  These include a Passage Health Verification of Benefits form dated January 18, 2023, shortly after Taliaferro's hospitalization.  Response Ex. A (ECF No. 27-1).  The documents do not appear to proclaim that Martin's Point is a Medicare Part C insurer, though there is a reference to "Medicare coding requirements" in at least one letter authored by Martin's Point.

Because the exhibits are integral to the communications between Martin's Point and Passage Health, and because those communications underlie Hospital Quirurgica Del Sur's causes of action, and because neither party disputes the authenticity of the documents, I have considered the documents in the context of the Motion to Dismiss, without converting the motion into a motion for summary judgment.  *See Goldberg v. Unum Life Ins. Co. of Am.*, 527 F. Supp. 2d 164, 167 (D. Me. 2007).[1]

## DISCUSSION

Pursuant to Rule 12(b)(1), a defendant may file a motion to dismiss contending that the court lacks jurisdiction over the subject matter of the litigation.  Fed. R. Civ. P. 12(b)(1). The burden to prove the existence of subject matter jurisdiction rests with the party invoking the court's jurisdiction.  *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003). For claims arising under the Medicare Act, which uses the same exhaustion requirement as the Social Security Act, the failure to exhaust administrative remedies provides a basis for

---

[1] This observation is offered only in an abundance of caution.  In a Rule 12(b)(1) motion, "[t]he court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiffs allegations."  *Dynamic Image Techs*., *Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).

the dismissal of a district court action on jurisdictional grounds. *Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 19 (1st Cir. 2017); *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 7–8 & n.6 (1st Cir. 2005).

Martin's Point argues that Hospital Quirurgica Del Sur's causes of action cannot be maintained in this Court at this time and should be dismissed for lack of jurisdiction because federal law requires that Hospital Quirurgica Del Sur exhaust administrative remedies before filing a complaint seeking judicial review of its dispute with Martin's Point. Mot. at 7–13. Martin's Point's argument rests on its status as a Medicare Advantage organization ("MAO"), the fact that Mr. Taliaferro was insured by Martin's Point under Part C of the Medicare Act, and the fact that Hospital Quirurgica Del Sur's civil action is based on alleged misrepresentations concerning the availability of insurance benefits.

In response, Hospital Quirurgica Del Sur relies on the notion that it has plausibly plead garden variety state law claims arising in diversity. Opposition at 1–2, 4–8. Hospital Quirurgica Del Sur also asserts that "Martin's Point is applying inappropriate standards in asserting that the foreign hospital fails to comply with administrative requirements [because Hospital Quirurgica Del Sur] is . . . a non-Medicare, non-contracted provider, a distinction from a non-contracted provider within the United States"; Martin's Point "is free to offer services for out-of-network international claims for emergency services"; and Hospital Quirurgica Del Sur "properly alleged that they did so here and later reneged on . . . representations that coverage was available." *Id.* at 5. In its view, emergency overseas benefits "are not governed by Medicare" and, therefore, a foreign hospital "cannot enter into a contract with any Medicare Advantage Organization." *Id.* at 5–6.

5

For reasons that follow, I am not persuaded by Hospital Quirurgica Del Sur that Martin's Point is "free" to provide whatever coverage it desires for international emergency service and that disputes concerning such benefits fall outside the Medicare program.

The Medicare program is a federal welfare benefit program that provides health insurance coverage to, among others, people 65 years of age and older. *Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico*, *Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023) (citing 42 U.S.C. § 1395c). Parts A and B of the Medicare Act afford medical benefits according to a fee-for-service schedule established by the Centers for Medicare and Medicaid Services ("CMS"), a sub-agency of the Department of Health and Human Services. *Id.* Part C of the Medicare Act establishes a Medicare Advantage program through which CMS contracts with private insurers that then develop their own networks of care to deliver both mandated Medicare benefits and some supplemental benefits that are not available under Parts A and B of Medicare. *Id.* The payment system under Part C differs from the fee-for-service schedule of Parts A and B, and generally entails a mash-up of market, welfare, and managed care attributes that, it is said, resemble a market-oriented approach to the delivery of healthcare services. *Id.* & n.1. Nonetheless, the provision of Part C benefits and disputes over payments remain very much within the Medicare program.

Persons who enroll in a plan offered by a MAO pay for supplemental benefits by means of premiums or cost sharing. 42 C.F.R. §§ 422.110(c)(2), 422.102(c). Although "CMS generally has little say over the package of supplemental benefits that a plan chooses to offer," MAOs' plans are subject to a battery of rules and standards and CMS must

6

approve all supplemental benefits included in a plan offered by a MAO.  42 U.S.C. §§ 1395w-26(b), 1395w-27(a); 42 C.F.R. § 422.110(f).  The approval process includes a review to ensure the MAOs meet financial solvency and capital adequacy standards.  42 U.S.C. § 1395w-26(a).  Typically, MAOs arrange for the provision of healthcare services to their enrollees by means of contract providers or managed care networks.  However, Medicare requires that certain services provided to enrollees be paid for even if the provider is not a contract provider, one example being emergency medical services.  *Id.* § 1395w-22(d)(1)(E); 42 C.F.R. §§ 422.100(b)(1), 422.113.

MAOs are insulated from state interference in the form of supplemental standards and are subject to near exclusive regulation by the Secretary of Department of Health and Human Service and CMS.  42 U.S.C. § 1395w-26(b)(3) ("The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part.").  When disputes arise over the payment of a MAO enrollee's medical bills, Congress has prescribed an administrative review process.  *Id.* § 1395w-22(g).  The review process begins with initial and reconsideration determinations by the MAO, 42 C.F.R. §§ 422.566, 422.578, 422.582; moves on to review by an independent outside entity, *id.* § 422.592; continues with a hearing before an administrative law judge, *id.* § 422.600; proceeds to the Medicare Appeals Council, *id.* § 422.608; and culminates with judicial review of the final administrative determination, *id.* § 422.612.  The administrative review process is open to providers, who may proceed as an assignee of the enrollee's right to coverage, though the

regulations require that the provider waive any right to payment from the enrollee. *Id.* §§ 422.566(c)(1)(ii), 422.574(b).

The Medicare Act also makes Part C disputes subject to the provisions of, inter alia, 42 U.S.C. § 405(h). *See* 42 U.S.C. § 1395ii. Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). Section 405(h) is understood to dictate that the administrative review process is the exclusive means of resolving disputes arising under the Medicare Act, even to the extent of actions brought under section 1332 of Title 28 (diversity jurisdiction). *See Allstar Care Inc. v. Blue Cross & Blue Shield of S.C.*, 184 F. Supp. 2d 1295, 1298 (S.D. Fla. 2002) (first citing *Bodimetric Health Servs., Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 489 (7th Cir. 1990); and then citing *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1003–04 (8th Cir. 1998)).

Based on this regulatory framework, the Ninth Circuit has held "that Congress intended to impose under the Medicare Advantage program the same administrative exhaustion requirement that applies to claims for benefits under original Medicare," meaning that judicial review must be held in abeyance until a final decision emerges from the administrative review system. *Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905 (9th Cir. 2022); *cf. Puerto Rican Ass'n of Physical Med. & Rehab., Inc.*

8

*v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (observing that the section 405(h) bar requires the channeling of "virtually all legal attacks through the agency" (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000))); *Ill. Council*, 529 U.S. at 23 (observing that litigants "remain free, . . . after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends"). In *Global Rescue Jets*, a rescue service provided emergency service to persons who became ill in Mexico. 30 F.4th at 908. The ill patients assigned their claims for Part C benefits from Kaiser to the rescue service. Kaiser declined to reimburse the rescue service except to the limit of Medicare approved rates, resulting in litigation. *Id.* at 908–10. The Ninth Circuit affirmed the dismissal of the lawsuit based on lack of subject matter jurisdiction—failure to exhaust administrative remedies. *Id.* at 919–20. It reasoned that the dispute over payment was "inextricably intertwined with claims for benefits under Part C of the Medicare Act," *id.* at 919, since the rescue service sought to recover payment from a MAO, *id.* at 916–19. According to the Ninth Circuit, "Congress intended to impose . . . the same administrative exhaustion requirement that applies to claims for benefits under original Medicare." *Id.* at 914; *see also id.* (observing that the "constraints on judicial review imposed by § 405(h) apply equally to claims for benefits under Part C" and citing *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584 (11th Cir. 2017)).[2]

---

[2] In *Tenet*, the Plaintiffs-Appellants were non-contract providers that presented the defendant MAO with periodic, recurring claims such that the MAO was able to adjust payments to recoup alleged, past overpayments, resulting in new, disputed underpayments. The *Tenet* Court held that a non-contract provider that delivers services to a Medicare Part C enrollee is subject to the Medicare Act's administrative

9

For the reasons set forth in *Global Rescue Jets*, I am persuaded that Hospital Quirurgica Del Sur's effort to collect against Martin's Point is subject to the mandatory administrative review process. And based on *Allstar Care* and the authorities cited therein, *see supra*, Hospital Quirurgica Del Sur's reliance on diversity rather than federal question jurisdiction does not change the analysis.

Because Hospital Quirurgica Del Sur's claims seek to make a MAO pay for services provided to a Medicare Part C enrollee, I conclude that, at least for purposes of domestic litigation in state or federal court, their claims arise under the Medicare Act and must, preliminarily, be channeled through the administrative review process. Minimally, it is appropriate that this threshold jurisdictional question should be ironed out in this Circuit before this matter proceeds to discovery and trial (and before I consider Martin's Point's alternative arguments for dismissal for failure to state a claim). While Hospital Quirurgica Del Sur contends that its situation differs from the situation in *Global Rescue Jets*, because this case does not present a claim for breach of contract, I do not see why causes of action based on equity and torts should be treated differently than a cause of action based on contracts. All of these causes of action are similarly rooted in state common law and all succumb equally to the dictates of federal law.

---

apparatus because the provider's claim for reimbursement is based on the assignment of the Medicare Part C enrollee's right to coverage, and that the non-contract provider cannot plead its way around administrative exhaustion by presenting state common law claims arising out of the MAO's authorization to provide services and promise of reimbursement. *Id.* at 588–89.

Because the Complaint does not include allegations that demonstrate exhaustion of the administrative process, the Court lacks jurisdiction to review Martin's Point's refusal to pay the entire medical bill submitted by Hospital Quirurgica Del Sur.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 19) is **GRANTED** and the case is **DISMISSED** for lack of subject matter jurisdiction.

SO ORDERED.

Dated this 23rd day of April, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge